COMMON CAUSE/OHIO, Appellant,

v.

OHIO ELECTIONS COMMISSION, Appellee.

Alliance for Democracy, Appellant,

v.

Ohio Elections Commission, Appellee.

[Cite as *Common Cause/Ohio v. Ohio Elections Comm.,*
150 Ohio App.3d 31, 2002-Ohio-5965.]

Court of Appeals of Ohio,
Tenth District, Franklin County.

Nos. 02AP–439, 02AP–440 and 02AP–441.

Decided Oct. 31, 2002.

32

Donald J. McTigue; Clifford O. Arnebeck Jr.; David Goldberger and Edward B. Foley, for appellants.

Betty D. Montgomery, Attorney General, and Sharon A. Jennings, Assistant Attorney General, for appellee Ohio Elections Commission.

Jones, Day, Reavis & Pogue and Matthew A. Kairis, for amicus curiae Chamber of Commerce of the United States.

---

DESHLER, Judge.

{¶ 1}  Appellants, Common Cause/Ohio and the Alliance for Democracy, appeal from a judgment of the Franklin County Court of Common Pleas that granted motions to dismiss appeals from separate orders of appellee, the Ohio Elections Commission.  This matter is a consolidation of three separate actions filed before the commission.  The first of these actions was by Common Cause/Ohio against the Citizens for a Strong Ohio ("CSO"), the second was by Common Cause against the Chamber of Commerce of the United States of America ("COC"), and the third was by the Alliance for Democracy against both CSO and COC.

{¶ 2}  The original complaints involved paid political advertisements ("ads") sponsored by CSO and COC during the period leading up to the 2000 election of Ohio Supreme Court justices.  Although purporting to be "issues" ads that did not support the election or defeat of particular candidates, specifically mentioned in the ads were two Ohio Supreme Court justices and their opponents.  Common Cause and the Alliance for Democracy filed the actions on the grounds that the content of the ads violated sections of the Revised Code that prohibit unfair political campaign activities.

{¶ 3}  The first action was expedited pursuant to R.C. 3517.156, and submitted to a panel of the commission, which concluded that there was no probable cause and dismissed the complaint in October 2000.  However, a panel of the commission concluded that the second and third actions did have probable cause, and the matter was submitted to a full panel.  Nevertheless, the commission ultimately granted separate motions for judgment on the pleadings and for summary judgment and dismissed both cases in April 2001.  Appellants then appealed to the common pleas court.

{¶ 4}  The common pleas court, persuaded that this court's decision in *Billis v. Ohio Elections Comm.* (2001), 146 Ohio App.3d 360, 766 N.E.2d 198, and the decision of the United States Supreme Court in *Buckley v. Valeo* (1976), 424 U.S. 1, 96 S.Ct. 612, 46 L.Ed.2d 659, were dispositive of the issues presented, granted the commission's motions to dismiss on the grounds that the commission's decisions were not appealable.

{¶ 5}  Common Cause and the Alliance for Democracy now assign the following as error:

{¶ 6} "The trial court erred in holding that a party whose complaint is dismissed by the Ohio Elections Commission does not have a right to appeal pursuant to R.C. 3517.157(D)."

{¶ 7} At issue is the interpretation of statutes setting forth procedures for adjudication of complaints before the commission. R.C. 3517.157(D) provides:

{¶ 8} "(D) The commission or a panel of the commission shall conduct hearings in accordance with Chapter 119. of the Revised Code and the Rules of Civil Procedure, except as they are inconsistent with rules adopted by the commission. A party adversely affected by a final determination of the commission may appeal from the determination under section 119.12 of the Revised Code."

{¶ 9} The commission's position is that because the first case involved a finding of no probable cause, and the second two cases were dismissed without an adjudicatory hearing at which witnesses testified and evidence was presented, there was no "final determination" resulting in an appealable order. Appellants maintain that they are parties "adversely affected" by what ended up to be a "final determination" by the commission denying their claims, and so they have a right of appeal.

{¶ 10} In *Billis*, supra, this court addressed whether the commission's dismissal of an action after a finding of no probable cause gave rise to a right of appeal. Upon a review of the relevant statutes, this court held that it did not, because at the preliminary review stage of the proceedings the commission is to review only the pleadings, evidence, and motions to determine jurisdiction, sufficiency of the complaint, and whether probable cause exists. At that stage, the commission is acting in an executive, rather than in an adjudicative, function, and because a dismissal based on lack of probable cause is not an adjudication there is no provision for appeal. Id., citing *State ex rel. Citizens for Van Meter v. Ohio Elections Comm.* (1992), 78 Ohio App.3d 289, 294, 604 N.E.2d 775.

{¶ 11} Clearly, this analysis would apply to the first case, in which the commission concluded that there was no probable cause to proceed to a full panel hearing. We therefore find that the trial court did not err in concluding that appellants had no right of appeal from that decision.

{¶ 12} However, the second two causes of action are significantly different. In both cases, there was a finding of probable cause, and a hearing before the full panel of the commission was set. Although the granting of the motions to dismiss ultimately prevented a full hearing on the actions, the record is clear that by the time the motions to dismiss were filed, the commission had moved beyond its executive function and was acting in its adjudicative role.

{¶ 13}  As already noted, R.C. 3517.157 gives a right of appeal pursuant to R.C. 119.12 to any party "adversely affected" by a "final determination" of the commission.  R.C. 119.12 allows appeal for any party "adversely affected" by any order of an agency issued pursuant to an "adjudication."  R.C. 119.01(D) defines "adjudication" as meaning "the determination by the highest or ultimate authority of an agency of the rights, duties, privileges, benefits, or legal relationships of a specified person," with R.C. 119.01(F) defining "person" as a "person, firm, corporation, association, or partnership."

{¶ 14}  At issue is whether the commission's decision to grant a motion for judgment on the pleadings and a motion for summary judgment are "adjudications" giving rise to a right of appeal.  Civ.R. 12(C) permits judgment on the pleadings where the court, construing the material allegations in the complaint in favor of the nonmoving party as true, finds beyond doubt that "the plaintiff could prove no set of facts in support of his claim that would entitle him to relief." *State ex rel. Midwest Pride IV, Inc. v. Pontious* (1996), 75 Ohio St.3d 565, 570, 664 N.E.2d 931.  Similarly, Civ.R. 56(C) provides that summary judgment may be granted where it appears from the evidence "that reasonable minds can come to but one conclusion and that conclusion is adverse to the party against whom the motion for summary judgment is made," with the evidence being construed most strongly in the nonmovant's favor.  In reviewing a judgment of a trial court granting summary judgment, an appellate court must conduct an independent review of the record to determine whether, construing the evidence in favor of the nonmovant, there is any genuine issue of material fact.  *Murphy v. Reynoldsburg* (1992), 65 Ohio St.3d 356, 360, 604 N.E.2d 138.  It is axiomatic in civil practice that the judgment of a trial court granting a motion for judgment on the pleadings or a motion for summary judgment operates as an adjudication, resulting in a final appealable order.  We find nothing in R.C. Chapters 119 or 3517 that would indicate that the granting of such motions by an administrative body does not operate as a final determination of the action, so long as, in doing so, the administrative body is acting in its adjudicative role.

{¶ 15}  The commission points out, and the trial court seems to have relied upon, a section of the administrative rules which, it is argued, allows the full panel to consider and grant a motion to dismiss without it being a "final determination."  Ohio Adm.Code 3517–1–11(A) states:

{¶ 16}  "* * * A preliminary review of the allegations shall be held by a probable cause panel or the full commission, at the discretion of the staff attorney to the commission.  At the preliminary review stage, the body hearing the case *shall review all pleadings, evidence, and motions before it to determine jurisdiction, sufficiency of the complaint, and whether probable cause exists for the full*

*commission to determine whether a violation of Ohio election law has occurred."* (Emphasis added.)

{¶ 17} Assuming, arguendo, that this section of the code does, in fact, allow a dismissal without a final determination being made, the facts in the second two actions in the case at bar do not support such a finding. First, the record indicates that once the probable cause panel determined that there was probable cause to believe that a violation had occurred, the matter had traversed beyond the "preliminary review" stage covered by Ohio Adm.Code 3517–1–11(A). Second, our interpretation of the administrative rule is that the section does not refer to a review of all motions, but, rather, only to a review of motions having to do with "jurisdiction, sufficiency of the complaint, and * * * probable cause."

{¶ 18} The basis for the motions filed before the commission in this case did not involve any of those issues, but, rather, the question of whether *Buckley*, supra, operated to protect the contested political advertisements as being "issue based" political speech that did not contain the "magic words" of "express advocacy" that would potentially invoke First Amendment protections. See *Buckley*, citing *Thomas v. Collins* (1945), 323 U.S. 516, 65 S.Ct. 315, 89 L.Ed. 430. This issue is not a preliminary matter, involving questions of jurisdiction, sufficiency of the complaint, or probable cause, but is rather at the heart of the action, addressing the legal standard to be applied to appellants' cause. The determination of this issue involves a concise reading of the law in light of the facts, and a disposal of an action on this basis must be viewed as a judgment on the merits.

{¶ 19} Finally, we note that Ohio Adm.Code 3517–1–01(B) requires the rules to be "construed and applied to effect due process [and] just results." To apply the rules in a manner allowing the commission to dismiss any action for any reason without its decision being subject to judicial review would clearly be an unjust result.

{¶ 20} Having determined that the commission's decision to grant the motions for judgment on the pleadings and for summary judgment were "final determinations" that adversely affected appellants, giving them a right to appeal to the common pleas court, we find that the court erred in granting the commission's motions to dismiss the actions for lack of appealability. It remains to be determined whether the commission's dismissal of the second and third actions was in accordance with law. On this question, our review is plenary. *Univ. Hosp., Univ. of Cincinnati College of Medicine v. State Emp. Relations Bd.* (1992), 63 Ohio St.3d 339, 587 N.E.2d 835.

{¶ 21} As stated above, both judgment on the pleadings and summary judgment require the trier of fact to review the matter in light of relevant law,

construing the facts most strongly in the nonmovant's favor, in order to determine whether there are issues of fact that would require the case to move forward rather than to be dismissed. In this case, the commission relied upon *Buckley,* apparently concluding that the political ads in question were protected speech under the First Amendment and that any decision that found a violation of R.C. 3517.21 and/or 3517.22, regulating unfair political campaign activities and unfair activities in an issue campaign, under these facts would be struck down as unconstitutional.

{¶ 22} This court has reviewed *Buckley* and finds nothing in that case that would extend First Amendment protection to speech that is either known to be false or that is disseminated with reckless disregard of whether it is false. When this matter, in a different posture but with essentially the same parties and issues, was brought before a federal court, Judge Sargus summed it up succinctly:

{¶ 23} "Further, contrary to the assertions of the Chamber of Commerce, this issue of sanctioning libel or slander occurring in the context of an election, is nowhere addressed in *Buckley.* While *Buckley* prohibited limitations on advocacy groups not expressly endorsing or opposing a candidate for public office, neither *Buckley,* nor any other case cited by the Plaintiffs, affords defamatory speech made by a person or organization greater or lesser protections depending on whether the group engaged in issue-based speech or express advocacy or opposition to a candidate. Thus, the Court concludes that *Buckley* is not the proper standard to apply in the present context[.]" *Chamber of Commerce of the United States of Am. v. Ohio Elections Comm.* (S.D.Ohio 2001), 135 F.Supp.2d 857, 869.

{¶ 24} Ohio law clearly prohibits political speech that is false or made with reckless disregard of whether it was false or not. R.C. 3517.21 and 3517.22. See, also, *Hummel v. Ohio Elections Comm.* (1997), 124 Ohio App.3d 434, 437, 706 N.E.2d 416. Under the appropriate factual scenario, the commission may constitutionally determine that statements known to be false or which were made with reckless disregard as to their falsity violate Ohio law and are not protected by the First Amendment. *McKimm v. Ohio Elections Comm.* (2000), 89 Ohio St.3d 139, 150, 729 N.E.2d 364. Disseminators of false statements may not rely upon First Amendment protections, regardless of whether the speech contains the so-called "magic words" expressing advocacy of or opposition to a particular candidate. The commission, as holder of exclusive jurisdiction over claims of fraudulent and false statements arising under R.C. Chapter 3517, see *State ex rel. Taft–O'Connor '98 v. Franklin Cty. Court of Common Pleas* (1998), 83 Ohio St.3d 487, 700 N.E.2d 1232, is charged with investigating and adjudicating such claims, and clearly errs by dismissing them on the grounds that political

ads that do not contain express words of advocacy are protected by the First Amendment no matter how defamatory or false their content may be.  Such a position is not only unjust, it is completely unsupported by Ohio law and by constitutional law.

{¶ 25}  We therefore conclude that while the trial court properly dismissed appellants' first cause, the court erred in dismissing the second two causes of action, and therefore appellants' assignment of error is overruled in part and sustained in part.  The judgment of the Franklin County Court of Common Pleas is reversed, and this matter is remanded to the commission for further proceedings in light of the decision rendered herein.

Judgment affirmed in part,
reversed in part
and cause remanded.

BOWMAN and LAZARUS, JJ., concur.